# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Alexandria Division

In re:

TABINDA SARFRAZ,                                                  Case No. 17-12840-KHK

    Debtor.                                                                Chapter 13

## MEMORANDUM OPINION

This matter came before the Court on December 13, 2018 for an evidentiary hearing on the objection of Iftakhar Khan to the second amended chapter 13 plan filed by Tabinda Sarfraz ("Debtor"). (Docket No. 70). At the conclusion of the hearing, the Court took the matter under advisement. Having considered the pleadings and heard the evidence and arguments of counsel, the Court makes the following findings of facts and conclusions of law.

## Findings of Facts

On August 23, 2016, Iftakhar Khan filed a complaint in the Circuit Court of Fairfax County, Virginia requesting a judgement against Ms. Sarfraz, for amounts due on a promissory note. A trial was set for August 22, 2017, but the filing of this bankruptcy stayed the state court action. (Adversary Proceeding No. 17-01123, Docket No. 1 at p. 7). The Debtor filed for relief under chapter 7 of the Bankruptcy Code on August 19, 2017. (Case No. 17-12840, Docket No. 1.)

Ms. Sarfraz has worked in the banking industry for several years.[1] She left United Bank sometime during the latter half of July 2017 and two weeks after filing this case, she became a Branch Manager for Lafayette Federal Credit Union making $4,716 per month.

The Debtor lives at 2736 Bulkhead Drive, Woodbridge, Virginia (the "Property") along with her mother, Farzana Kousar, and two sisters, Maryam Sarfraz and Tahira Sarfraz in a single-family home. The family operates as a single economic unit, pooling their incomes and paying the household expenses from a joint checking account held in the names of Tabinda and Maryam Sarfraz. They have been co-mingling their finances for many years. Evidentiary Hearing Transcript ("Tr.") at 17:00, 29:00 and 92:00.

On February 24, 2017, the Debtor and her sister, Maryam Sarfraz, purchased the property. *Khan Ex. 1* ("Special Warranty Deed"). On May 17, 2018, the sisters conveyed an interest in the property to their mother, Farzana Kousar. The co-owners now hold their interests as joint tenants with rights of survivorship according to the General Warranty Deed that was recorded in the Prince William County land records on October 3, 2017, two months after this case was filed. *Khan Ex. 3* ("General Warranty Deed").

The Debtor's Schedule A describes her interest in the property as a 33% interest in property valued at $438,000 and her Schedule D discloses a mortgage lien of $430,275.43. (Docket No. 1) ("Voluntary Petition"). The only other non-exempt asset listed on the original Schedule B was a counterclaim for defamation and intentional infliction of emotional distress valued at $500,000 against Mr. Khan and others in the state court lawsuit.[2] *Id.*

---

[1] She was hired by Capital One Bank in January 2006 and was making $3,333 per month by April 2011. (Proof of Claim 4-1 at p. 7.) She was employed by United Bank in April 2014 and was making $5,092 per month by April 2017. (Proof of Claim 3-1 at p. 7).

[2] *Iftakhar Khan v. Tabinda Sarfraz*, Case No. CL-2017-0006952 (Fairfax County Circuit Court).

The Debtor's original Schedule I disclosed a projected monthly take-home pay of $1,835.08 and a contribution from her mother and sister of $1,965.23 for payment of their portion of the mortgage resulting in total net monthly income of $3,800.31. Her Schedule J indicated monthly expenses of $4,297.54, resulting in projected monthly disposable income of $497.54. *Id.*

Mr. Khan filed an adversary proceeding in this case against the Debtor on November 11, 2017, alleging the Debtor made false representations which induced him to loan her $150,000 to finance a new business and asking the Court to find the debt excepted from discharge under 11 U.S.C. § 523(a)(2)(A) of the Bankruptcy Code. (Docket No. 15).

On May 8, 2018, the Debtor filed a motion to convert her bankruptcy to a case under chapter 13 of the Code. (Docket No. 19). The Court conducted a hearing on the motion on June 5, 2018, and over the objections of Mr. Khan, granted the motion to convert on June 5, 2018. (Docket No. 32).

On June 22, 2018, the Court conducted a hearing on the merits of the adversary proceeding. The Debtor testified that she intended to use the funds borrowed from Mr. Khan to finance a new business, but that the business never opened. She offered no evidence to explain why the funds were not returned to Mr. Khan. The Court determined that the Debtor's testimony regarding what happened after negotiations for the intended business failed was not credible. The exhibits indicated the funds received from Mr. Khan were disbursed to the Debtor and her family members. At the end of the hearing, the Court found the debt owed on the promissory note was non-dischargeable under 11 U.S.C. § 523(a)(2)(A) and granted judgement in favor Mr. Khan for the unpaid debt, plus interest and attorney's fees. (Adversary Proceeding No. 17-01123, Docket No. 42).

The Debtor's first proposed chapter 13 plan dated June 29, 2018, provided for payments of $525 for sixty months for a total of $31,500 and resulted in a dividend of 12% to unsecured creditors. (Docket No. 40). Schedule I attached to the plan was amended to disclose net monthly take-home pay of $3,552.90 from her new job with Lafayette Federal Credit Union; it also included an additional $400.00 in rental income from a new tenant and a decreased family contribution of $1,050, resulting in a projected net monthly income of $5,002.90. *Id.* Schedule J showed increases in allowances for food and medical expenses, a new allowance for car insurance and eliminated the allowance for entertainment resulting in a projected monthly disposable income of $525. *Id*. at p. 7-10. The first plan and the first amended plan were very similar; both were denied confirmation.

The current plan, filed on November 8, 2018, proposes to pay $93,820.20 into the plan over five years resulting in a 28% dividend to unsecured creditors. (Docket No. 70). The amended Schedule I now includes monthly contributions from family members of $4,733 and shows a projected total monthly income of $9,586.86 for the household. The amended Schedule J discloses monthly total household expenses of $8,178.83, resulting in a projected monthly disposable income of $1,408.03. (Docket No. 70 at p. 7-10).

Mr. Khan filed his objection to the plan and motion to dismiss the case on November 19, 2018. (Docket No. 73).

### **Conclusions of Law**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the U.S.District Court for this District on August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) (confirmation of plans).

The Debtor bears the burden of proof with respect to all of the statutory requirements for confirmation, by a preponderance of the evidence. *In re Cole*, 548 B.R.132, 141 (Bankr. E.D. Va. 2016); *In re Colston*, 539 B.R. 738, 746 (Bankr. W.D. Va. 2015).

Section 1325 of the Bankruptcy Code lists the requirements a plan must meet in order to achieve confirmation. Mr. Khan contends that the plan cannot be confirmed because it fails to meet the requirements of this Section. First, he argues that the plan was not filed in good faith as required by 11 U.S.C. § 1325(a)(3). Second, he alleges the plan fails to pay unsecured creditors under the plan as much as they would receive in a chapter 7 liquidation as described in 11 U.S.C. § 1325(a)(4). This requirement is generally referred to as the "liquidation test". Third, he contends that the Debtor will not be able to make all payments under the plan as required under 11 U.S.C. § 1325(a)(6). This requirement is referred to as the test for "feasibility". Finally, he argues that the plan cannot be confirmed because the petition was not filed in good faith as required by 11 U.S.C. § 1325(a)(7). The Court declines to address the violations of the liquidation and feasibility tests in this case because the good faith issues are dispositive.

Bankruptcy Code Section 1325(a)(3) provides that a chapter 13 plan must be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). The Code also provides that the Court may only confirm a plan if "the action of the Debtor in filing the petition was in good faith." 11 U.S.C. § 1325(a)(7). Although these Sections are not identical, they will be considered in tandem because the facts in the case implicate both Sections.

To determine whether a chapter 13 petition and plan are filed in good faith, the Fourth Circuit applies a totality of the circumstances test as set forth in *Deans v. O'Donnell*, 692 F.2d at 972 and expanded in *In re Solomon*, 67 F.3d 1128, 1134 (4th Cir. 1995), and *Neufeld v. Freeman*, 794 F.2d 149, 152 (4th Cir. 1986). The test for good faith contains both objective and

5

subjective components. *Id*. The underlying inquiry is based on fundamental fairness. The non-exhaustive list of the factors to be considered includes:

1. the Debtor's past bankruptcy filings;
2. the Debtor's financial situation;
3. the Debtor's employment history, and current and future employment prospects;
4. the percentage of proposed repayment to creditors;
5. the time over which creditors will receive payment;
6. the nature of the Debtor's pre-petition conduct that gave rise to the case;
7. whether the debts would be dischargeable in a chapter 7 proceeding;
8. the nature and amount of unsecured claims;
9. the Debtor's honesty in disclosing facts of the case; and
10. any other unusual or exceptional problems the debtor faces,

The foregoing factors are each still relevant in post-BAPCPA cases. In re Edmunds, 350 B.R. 636, 649 (Bankr. D.S.C. 2006). The Court will address the factors above that are relevant to the instant case.

*Factors That Support a Good Faith Finding*

To her credit, the Debtor has never filed for bankruptcy before and she has a stable employment history. Her financial situation is secure, in part because she shares a household with two sisters who are also gainfully employed. Both sisters anticipate receiving more income in the future. Maryam Sarfraz testified that she expects to be promoted and receive a raise soon. (Tr. at 93). Tahira Sarfraz, who currently works part-time, testified that she is one semester away from acquiring her Degree, and upon graduation she intends to get full time employment.

(Tr. at 113.) Both sisters have a vested interest in making sure this plan is successful because if it fails, they lose their home.

In addition to the claim of Mr. Khan, three other creditors filed unsecured claims in this case. No objections to these claims have been raised, so they are presumed to be allowed. The total amount owed on the three claims is $21,823.48, so these creditors would receive a total payout of $6,082.57 over 5 years and the balance of their claims would be discharged if the Debtor receives a discharge of any kind under 11 U.S.C. § 1328. *See* Case No. 17-12840, ("Claims Register"). Their claims would be discharged in full if the Debtor received a discharge under chapter 7, so these creditors fare better under a chapter 13 case than they would under a chapter 7 case.

*Factors Against a Finding of Good Faith*

Mr. Khan's claim for $264,337.50 comprises 92% of the total allowed unsecured claims. *Id.* Under the plan, he would receive $74,015 over 5 years and the remainder of his claim would be discharged if Ms. Sarfraz completes her plan and receives a discharge under 11 U.S.C. § 1328(a). However, his claim has been reduced to a non-dischargeable judgement, so if the Debtor fails to complete the plan payments and her case is dismissed, then he could record his judgement to perfect a lien against her home and sell the property to acquire her share of any equity.[3] Moreover, he could garnish the Debtor's wages and possibly recoup much more than the $74,015 he is limited to under the current plan.

Ms. Sarfraz argues that discharge of the debt to Mr. Khan through use of the expanded discharge in Chapter 13 was contemplated by Congress and represents a legitimate use of the bankruptcy process. Mr. Khan argues that even though this is permissible under the Code, it

---

[3] *Khan Ex. 5* ("Residential Appraisal" dated November 1, 2018) indicates the current market value of the property is $530,000.

7

would be unfair, in light of the totality of the circumstances, to allow Ms. Sarfraz to avoid repaying 72% of an obligation she acquired as a result of fraudulent activity. The Court finds Mr. Khan's argument persuasive for the reasons stated below.

This bankruptcy was filed on the eve of a trial that might have led to the entry of a substantial state court money judgement against the Debtor in favor of Mr. Khan. Even though the state court action was stayed by this case, Mr. Khan promptly filed an adversary proceeding against the Debtor alleging fraud in order to pursue his claim in this Court. On the eve of the trial in the adversary proceeding, Ms. Sarfraz again attempted to sidestep or minimize the financial consequences of her fraudulent behavior by converting her chapter 7 bankruptcy to a case under chapter 13.

As was the case in the adversary proceeding, the Court continues to question the Debtor's honesty in disclosing material facts in this case. The timing and nature of the disclosures included in some of the amendments filed by Ms. Sarfraz are suspiciously convenient and demonstrate a lack of candor with this Court. For example:

1. Only after Mr. Khan initiated the adversary proceeding against her, did Ms. Sarfraz amend her petition to add the name of the business she intended to open using the funds she borrowed from him. (Docket No. 16 at p. 2.)

2. Only after the trial date was set in the adversary proceeding did Ms. Sarfraz amend Schedule B to delete the $500,000 value she ascribed to her claims against Mr. Khan and others and amend Schedule F to increase the value of his claim against her from $0 to $150,00. (Docket No. 17 at pp. 5 and 12.)

3. She also amended her Statement of Financial Affairs to add the names of those insiders who received transfers within 1 year of filing her petition. (Docket No. 17 at p.17.)

8

4. The Official Form 122A-1, Chapter 7 Statement of Your Current Monthly Income filed with the original petition required the disclosure of the average monthly income received from all sources, derived during the six months before the case was filed. In this case, the applicable period was February 2017 through July 2017. The Debtor's Form 122A-1 discloses gross monthly income for the applicable look-back period of $2,389.01. (Docket No. 17 at p. 44.) However, this figure is inconsistent with her testimony and other Court records. Ms. Sarfraz testified that she was unemployed for a month between the end of July and her start date with her new employer in early September 2017. (Tr. at 80:00-81:00.) If she was employed by United Bank until the middle of July and was receiving gross wages of $5,091 monthly as previously determined, then the gross monthly income reported on Form 122A-1 appears to be only one-half the income that should have been disclosed.

Conversion from a chapter 7 to a chapter 13 case is not uncommon in bankruptcy, and it generally entails amendments to schedules. In this case, Ms. Sarfraz' new employment and the acquisition of a tenant post-petition were reasonable justifications for amending her schedules and statements. However, other amendments appear to have been triggered by Mr. Khan's vigorous pursuit of his claim. For example, the Debtor's income from family contributions decreased from $1,965 to $1,050 for reasons unknown when she decided to convert her case. Moreover, after the case was converted, Ms. Sarfraz' projected household monthly income rose from $5,002.50 to $9,586 which resulted in an increase in projected monthly disposable income from $525 to $1,408. Some of the changes were clearly warranted. However, most were manipulations to suit her needs first, to appear penniless at the beginning of the case, then to

become eligible to be a chapter 13 debtor, and finally to have sufficient resources to pay $93,000 into a chapter 13 plan.

**Conclusion**

Ms. Sarfraz has jumped through several hoops to avoid repaying Mr. Khan when she had the funds readily available to do so, and to avoid facing the consequences of her actions thereafter. She sought sanctuary in bankruptcy while she was between jobs to avoid a trial that involved fraud; then she moved to convert her case in order to avoid a second trial based on fraud. Finally, her access to financial resources has been a moving target throughout this proceeding.

Although her plan may be feasible, the totality of the circumstances surrounding this case clearly indicate that the petition and plan have not been filed in good faith as required under 11 U.S.C. §§ 1325(a)(3) and 1325(a)(7). Both objective and subjective factors support this determination including, the nature of her pre-petition fraudulent conduct, the timing of the filing of the petition and conversion to chapter 13, and the non-dischargeable nature of her debt to Mr. Khan. Furthermore, the timing and nature of the amendments to her schedules and statements demonstrate the Debtor's lack of candor in disclosing material facts about this case.

The Bankruptcy Code was amended to add 11 U.S.C. § 1325(a)(7) by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA). In *In re Bateman*, the Court indicated that, in the context of Section 1307(c), the proper good faith inquiry is whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [the Chapter] in the proposal or plan. *Branigan v. Bateman (In re Bateman)*, 515 F.3d 272, 283 (4th Cir. 2008) (quoting *Deans v. O'Donnell*, 692 F.2d 968, 972 (4th Cir. 1982)). *See also In re Bland*, No. 06-1159, Bankr. LEXIS 1331, at *7 (Bankr. N.D. W. Va. May 6, 2008).

10

Ultimately, the Debtor has failed to present sufficient evidence to convince the Court that she is the poor but honest Debtor the Bankruptcy Code is designed to protect. Accordingly, confirmation of her second amended chapter 13 plan shall be denied and this case shall be dismissed.

The Court will enter a separate Order consistent with findings of fact and conclusions of law contained in this Memorandum Opinion.

Date: Mar 8 2019

/s/ Klinette Kindred

Klinette H. Kindred
United States Bankruptcy Judge

Electronic copies to:

Jonathan Baird Vivona
Martin R. Mann
Thomas P. Gorman

Entered on Docket: Mar 8 2019

Copy by Mail to:

Tabinda Sarfraz
2736 Bulkhead Drive
Woodbridge, VA 22191